to marriages subsequently contracted, there is no doubt of the power of the Legislature to limit, or even absolutely take away, the present right of dower.

Again, the citizen has no vested rights in statutory privileges or exemptions. Cooley, Const. Lim. (6th Ed.) 471. I cannot see why it is not within the power of the Legislature to repeal every statutory requirement respecting the obligations of persons engaged in business of the character of that of the plaintiff, and to pass a statute annulling the old common-law rule and providing that so far as the consumer is concerned such persons should be obliged to contract only with those with whom they desire to contract and upon such terms as should be mutually satisfactory. If the Legislature can, by statute, utterly destroy the common-law right of the consumer, a statute which at the most only impairs without destroying that right is not in violation of any constitutional provision for the benefit of the consumer, and he cannot be heard to complain respecting the same. The distinction between the right of the public utility corporation and the consumer to review legislative action fixing rates is that, in the case of the former, constitutional rights may be affected by an unreasonable rate. In the case of the latter they cannot be. The consumer is not left under such circumstances at the mercy of a public utility corporation. But he must seek his protection through the Legislature and not through the courts.

The people of this state have by a written Constitution separated and distributed governmental powers among the three departments of government created by it, the executive, legislative, and judicial, carefully enumerating such powers and defining their limitations. Matter of Guden, 171 N. Y. 529, 64 N. E. 451. The temptation is not infrequently offered to the judiciary to infringe upon the powers and prerogative of the other branches of the government. In no form is the temptation more insidious than when accompanied by a suggestion that the rights of the people have been sacrificed and that it is necessary that the judicial branch of the government should review and correct the wrong that has been done. The temptation should be firmly resisted. "For protection against abuses by Legislatures the people must resort to the polls, not to the courts." Munn v. Illinois, supra. It is gratifying to observe how promptly of late the Legislature has responded to the demands of an awakened and enlightened public sentiment in remedying wrongs.

The application must be denied.

---

(114 App. Div. 903)

FISCHER v. LANGLOTZ et al.

(Supreme Court, Appellate Division, First Department. June 20, 1906.)

1. PARTITION—BURDEN OF PROOF.

Under the express provisions of Code Civ. Proc. § 1537, in an action by one claiming to be entitled as joint tenant, or a tenant in common, by reason of his being an heir of a decedent, for the partition of the property, notwithstanding an apparent devise thereof by the decedent, and possession under such a devise, the burden is on plaintiff to establish the invalidity of the devise.

2. PERPETUITIES—SUSPENSION OF ALIENATION—REAL PROPERTY.

Testator's will provided in the third clause that his two sons should have the privilege of purchasing testator's interest in a certain partnership at a valuation of $5,000, which purchase price should be treated as a bequest to them. By the fifth clause it was provided that whatever sums of money the testator's trustees might see fit to pay over to testator's children, should be given to his four daughters until the sum received by each should equal half the purchase price paid by the sons for the interest in the business, from which time the surplus should be distributed equally between the children. The seventh clause directed the trustees to collect the rents and to apply the net income of one-sixth to the use of each child during his life, on the death of any child the property of such one-sixth to go to the child's heirs or testamentary appointee. The sons elected to take the business. It was contended that a trust was created invalid as suspending the power of alienation over real estate for more than two lives in being. *Held*, that the contention was without merit, since the seventh clause created valid separable trust estates, and while the fifth clause was invalid so far as it directed the accumulation of income, effect could be given to its intent, in which view each child took a life interest in one-sixth, under the seventh clause of the will, but the sons having received $2,500, the income of the share held in trust for each of them should first be applied in bringing about equalization.

Appeal from Special Term, New York County.

Suit by Johanna Fischer against Julia Langlotz and others. From a judgment in favor of defendants, plaintiff appeals. Affirmed on opinion of the lower court.

The following is the will referred to in the lower court opinion:

"I, Francis Hayek, of the city of New York, revoking all other and former wills by me made, do make, publish and declare this my last will and testament in manner following, that is to say:

"First. I direct the payment without delay after my decease of my funeral expenses and of all my just debts except those secured by mortgage.

"Second. I give and bequeath my watch, wardrobe and all my wearing apparel to my two sons, Francis, Jr., and Louis.

"Third. It is my will that my two sons Francis, Jr., and Louis shall have the right and privilege before all others of purchasing all my right, title and interest as partner in the cabinet making business now carried on by the firm of F. Hayek & Co. Accordingly in case they may desire to make such purchase they shall take my said interest after payment of partnership debts at a valuation of five thousand dollars, and such purchase price shall be treated as a gift and bequest to them under this my last will, and shall be charged to them as such, but without interest thereon, in the settlement of my estate. My sons shall have a like preference in respect to the occupation as tenants of so much room in, or of such parts of, the premises on the corner of Tenth avenue and Forty-fourth street, this city, as may be necessary to carry on their said business. There shall be an appraisement of the rent to be paid by them, and a new appraisement every five years so long as they continue such occupation and pay the rent, and until the termination of the trusts in respect to said premises in 10th avenue and Forty-fourth street created by this my will.

"Fourth, I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, and wheresoever situated, in trust, to the following named persons, to-wit: my son, Francis, my son, Louis, my son-in-law August Fischer, and my friend Anthony Eickhoff, for the purposes hereinafter stated. My said trustees, however, shall have no power to mortgage or other incumber any part of my real estate and no power to sell the same with the exception hereinafter specified in reference to certain real estate at Fort Lee, New Jersey.

"Fifth. It is my will that whatever sums of money my aforesaid trustees

may see fit from time to time to pay over to my children out of the surplus of the income of my estate that may remain after paying taxes, interest on mortgages and other necessary expenses, shall be so given to my four daughters until the whole sum so received by each daughter shall equal half the purchase price paid by my two sons for my interest in the firm of F. Hayek & Co., and then and from that time it is my will that such surplus of income shall be distributed equally among all my children share and share alike, and the lawful issue of such as may be deceased. The same equal distribution among all shall take place from the start in case my sons decline to purchase my interest in the firm of F. Hayek & Co.

"Sixth. As to my landed property or real estate situated at Fort Lee, Bergen county, New Jersey, and which forms no part of my summer residence or homestead there situated, I give full power and authority to my said trustees to sell and convey the same, or any part thereof, at such time or times, in such manner, at such price and upon such terms as they may deem best for the interest of my estate, but I hereby require and direct that the proceeds of such sale shall be applied first of all to the payment of any mortgage then existing upon my said summer residence or homestead.

"Seventh. I direct my above named trustees to collect the rents and other income of my real estate, and after payment of taxes and other expenses to apply the net income or proceeds of one-sixth thereof to the use of my daughter Mary Fischer during her natural life and upon her decease the trust as to said one-sixth shall cease and I thereupon give and devise the corpus or principal of said one-sixth to the children and heirs at law of my said daughter Mary or to such other person or persons as she may by her last will and testament appoint to receive the same. I make this same or similar disposition of one other sixth in favor of my daughter Louisa Suppes, also of one other sixth in favor of my daughter Julia Langlotz, also of one other sixth in favor of my daughter Johanna Fischer, also of one other sixth in favor of my son Francis, and also of one other and only remaining sixth in favor of my son Louis. I give full power and authority to my said trustees or to a majority of them to fill any vacancies that may occur in their number by death, renunciation, resignation or inability to act.

"Eighth. As to my real estate at Fort Lee situated outside of my homestead or summer residence that may be left unsold under the sixth clause of this my will and as to all my personal property not disposed of under the second and third clause hereof, I make the same disposition of it as that just above made of the real estate on the corner of Tenth avenue and Forty-fourth street. To speak briefly it shall go to my trustees in trust as to each one-sixth thereof to hold the same one-sixth during the life of each one of my six children respectively in trust for each respectively and then upon his or her decease the corpus of such sixth shall go to his or her children or heirs at law or such other person or persons as he or she may by will appoint.

"Ninth. As to my homestead or summer residence at Fort Lee consisting of three acres with all the buildings and appurtenances (excepting of course a plot of ground on the south side 44 feet in front and 100 feet deep with a house upon it built by my son Louis) I direct that this homestead property shall be taken care of and kept in order and repair by my said trustees for the benefit, use and enjoyment of all my grandchildren (children of my six children) including those that may be born after my decease until the youngest of my said grandchildren becomes ten years old at which time the said homestead property may be sold if a sale be then deemed desirable and the proceeds of the same be distributed equally among my said grandchildren.

"Tenth. It is my express wish that my above trustees shall not be held to furnish security or give bonds for the carrying out of the provisions of this will."

## The following is the opinion of the court below by Leventritt, J.:

"This is an action in partition involving a single piece of real estate, The construction of the will is incidental to the main relief sought. It is incumbent

on the plaintiff to establish, under section 1537 of the Code, that the apparent devise of this realty is void. Whatever may be said of the other clauses of the will it is clear from the instrument itself, as well as from the meager testimony adduced on the trial, that the property here in question passes under the seventh clause of the will which creates perfectly valid separable trust estates for the life of each of the testator's children with remainders over to their children in the absence of an exercise of the power of appointment. Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481. This seventh clause disposes of all of the testator's realty while the eighth makes disposition by precisely similar trusts of all the testator's personalty. The fifth clause of the will is doubtless confusing. If there is any inconsistency—and it might plausibly be argued that there is a double disposition of income—the later clauses together disposing of all the testator's property should control. The duty always cast upon the court to sustain a will if possible, is rendered all the more imperative in this case where the testator's intent is not only clear but was capable of effectuation without resort to any complicated testamentary devices. The testator desired that each of his six children should share equally in his estate. He wished, however, to have his two sons continue his business and provided that in the event that they elected to take it over, his interest be valued at $5,000 and that then each of his daughters should first receive $2,500 to equalize the shares before there should be any further distribution. The contingent gift of the business to the sons precedes any of the trust provisions and it seems clear that it was his purpose that, at their election, they should have the business in any event. It seems most anomalous, however, to say that the exercise of that election should make invalid a will otherwise good. Had the sons not taken over the business no possible question, save an academic one, could arise under this instrument. I find no such compelling necessity because they have elected. While the fifth clause, so far as it directs an accumulation of income, is invalid, effect can be given to its clearly disclosed intent when read in connection with the seventh and eighth clauses disposing of all the testator's property. That is to say resort may be had to it to discover and apply intent. In this view each child takes a life interest in one-sixth but the sons, each having received $2,500 by virtue of having taken over the business, the income of the share held in trust for each of them should first be applied in bringing about equalization. The testimony shows that has in effect already been accomplished. In any event as to each one-sixth as it passes under the seventh clause of the will, there is a suspension for but a single life. I am of the opinion that the complaint should be dismissed."

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and CLARKE, JJ.

C. W. Dayton, for appellant.

E. Miehling, for respondents.

PER CURIAM.  Judgment affirmed with costs on the opinion of the court below.

---

(50 Misc. Rep. 422.)

PADDELL v. CITY OF NEW YORK.

(Supreme Court, Special Term, New York County.  May, 1906.)

1. TAXATION—REAL ESTATE—DEDUCTION OF DEBTS.

Tax Law, (Laws 1896, p. 797, c. 908), § 1, provides that the assessment roll shall contain a statement of the real estate taxable to each person and the full value thereof and the full value of the personal property after deducting just debts owed. Section 3 provides that all the real property within the state and all personal property is taxable unless exempt by law. Held that a deduction from the assessment of real property of a mortgage thereon is not authorized by law, the only deduction allowed being made from personal property only.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, § 590.]